UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INA KODRA, *individually and on behalf of all others similarly situated*,<br><br>*Plaintiff*,<br><br>v.<br><br>M&T BANK CORPORATION,<br><br>*Defendant*. | CLASS ACTION COMPLAINT<br>Civil Case No. 1:20-cv-3682 |

## COMPLAINT

Plaintiff Ina Kodra, individually, and as the class representative on behalf of all others similarly situated, brings this employment discrimination suit against Defendant M&T Bank Corporation, a financial services company.

## SUMMARY OF CLAIM

1. M&T Bank Corporation denies employment opportunities to entire categories of individuals authorized to work in the United States based on their alienage. Specifically, M&T Bank categorically denies employment contracts to applicants for the position of retail branch manager and other positions within the Bank's Management Development Program if the applicants are work-authorized lawfully present noncitizens whose valid federal work authorization is subject to renewal after a future date of expiration. This facially discriminatory company-wide policy and/or practice constitutes intentional discrimination based on alienage in violation of 42 U.S.C. § 1981.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

3. This Court is empowered to issue a declaratory judgment and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391 (b)(1) and (d) because M&T Bank resides in and conducts business within this judicial District.

## PARTIES

*Plaintiff*

5. Plaintiff Ina Kodra is a 24-year-old citizen of Greece who presently lives in Queens County, New York State. Ms. Kodra received her bachelor's degree from Harvard College in May 2018.

6. Ms. Kodra is not a citizen of the United States. The U.S. Department of Homeland Security ("DHS") granted Ms. Kodra deferred action and authorization to work in the U.S. through the Deferred Action for Childhood Arrivals ("DACA") initiative. Ms. Kodra had work authorization with a future date of expiration when she applied for and was denied the retail branch manager position at M&T Bank. She continues to have work authorization and deferred action. Ms. Kodra does not require a sponsor in order to be authorized to work in the United States.

*Defendant*

7. Defendant M&T Bank ("M&T" or the "Bank") is an American multinational financial services company with 240 branches throughout New York State. M&T is headquartered at One M&T Plaza, Buffalo, New York, 14203-2399.

8. M&T, by soliciting, conducting, and transacting business in New York, engages in continuous, permanent, and substantial activity within the state.

**FACTUAL ALLEGATIONS**

*Background*

9. The United States Citizenship and Immigration Services ("USCIS") provides Form I-9 to employers within the United States to allow employers to verify the identity and employment authorization of individuals they wish to hire.

10. The Immigration Reform and Control Act of 1986 requires employers to complete and maintain a Form I-9 for each of their employees, whether such employees are U.S. citizens or noncitizens. *See* 8 U.S.C. § 1324A.

11. Both employees and employers must complete Form I-9. An employee must provide the employer with acceptable documents confirming both his identity and employment authorization.

12. Acceptable documents for Form I-9 verification are listed on the form and include, among others, a federal Employment Authorization Document ("EAD"). The EAD proves an individual is allowed to work in the United States for a specific time period. By itself an EAD establishes both identity and employment authorization. No further proof is necessary to satisfy the documentation requirement of Form I-9 and prove that the employee is authorized to work in the United States.

13. Employers may not specify which document(s) the employee may present to establish employment authorization and identity. Form I-9 warns employers that "[i]t is illegal to discriminate against work-authorized individuals. Employers CANNOT specify which document(s) an employee may present to establish employment authorization and identity. The refusal to hire or continue to employ an individual because the documentation presented has a future expiration date may also constitute illegal discrimination."

3

14. On June 15, 2012, the Secretary of DHS announced that the agency, through its exercise of prosecutorial discretion, would not seek to remove certain immigrants brought to the United States as children but instead consider them for grants of deferred action. The initiative is known as DACA.

15. Deferred action under DACA is a discretionary grant of authorized stay in the United States by the federal government. Deferred action under DACA is valid for a period of two years and is renewable for additional two-year periods.

16. DACA recipients are eligible to obtain federal work authorization and work in the United States. Work authorized DACA recipients possess an EAD and a Social Security number.

17. DACA's purpose, as explained by President Obama was to "[stop] expel[ling] talented young individuals who . . . [have] been raised as Americans; understand themselves to be part of this country . . . [and] who want to staff our labs, or start new businesses or defend our country."[1]

18. As of January 31, 2020 USCIS had approved 825,623 initial applications for DACA.[2]

19. DACA recipients are among many noncitizens who possess an EAD. Other noncitizens who possess work authorization that is subject to a specific validity period include: spouses of professional work visa holders; asylum applicants; survivors of human trafficking; individuals transitioning into legal permanent resident status; individuals with Temporary Protected Status; humanitarian parolees; deferred action recipients, including beneficiaries of the Violence Against Women Act; spouses and children of foreign government officials and exchange visitors;

---

[1] President Barrack H. Obama, Remarks by the President on Immigration (June 15, 2012), http://www.whitehouse.gov/the-press-office/2012/06/15/remarks-president-immigration (last visited April 29, 2020).

[2] USCIS, Number of Form 1-821D, Consideration of Deferred Action for Childhood Arrivals by Fiscal Year, Quarter, Intake and Case Status: Aug. 15, 2012 – Dec. 31, 2019 (January 2020), https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/All%20Form%20Types/DACA/DACA_performancedata_fy2020_qtr1.pdf.

and student visa holders.

*M&T's Discriminatory Policy*

20.     Defendant M&T intentionally discriminates against noncitizen applicants for employment in the United States on the basis of alienage by utilizing a facially discriminatory policy and/or practice that categorically denies the opportunity to enter employment contracts to lawfully present noncitizens who are authorized to work in the U.S., and whose valid federal work authorization contains a future expiration date.

21.     M&T further subjects noncitizen applicants to employment discrimination on the basis of alienage by imposing additional requirements that are not imposed on U.S. citizen applicants, and rejects the noncitizen applicants who cannot satisfy the additional requirements.

22.     On or about March 14, 2018, M&T denied Ms. Kodra's application for a job as a retail branch manager within the Bank's Management Development Program on the basis of these policies and practices, because she was a noncitizen with a valid EAD, and despite the fact that Ms. Kodra was authorized to work in the United States.

23.     In January 2018, Ms. Kodra applied for a position as a retail branch manager within the Management Development Program of M&T's Student, Graduate and Professional Training Programs. Ms. Kodra submitted her application through Defendant M&T's online job application portal for students.

24.     M&T's job listing for the retail branch manager position stated that an applicant must be "Authorized to work in the U.S. on a full-time, permanent basis without additional sponsorship."

25.     Aside from stating the requirement of work authorization, M&T's online application for employment did not request specific information regarding the applicant's eligibility to work.

26. During the last week of January 2018, M&T's Banking Officer-Management Development Program Recruiter, Jessica Vicario, emailed Ms. Kodra to say that Ms. Kodra's initial application qualified her for the next phase of the application process, which was a telephone interview.

27. On February 1, 2018, Ms. Vicario interviewed Ms. Kodra by telephone and stated that she was impressed by Ms. Kodra's application.

28. Also on February 1, 2018, following the telephonic interview, Ms. Vicario sent a follow-up email to Ms. Kodra. In the email, Ms. Vicario asked Ms. Kodra to review the various positions available and submit her top five position requests.

29. In response to Ms. Vicario's post-interview email, Ms. Kodra emailed Ms. Vicario on February 19, 2018 to express her interest in the retail branch manager position in either the Philadelphia or the New York office.

30. On February 22, 2018, Ms. Vicario acknowledged receipt of Ms. Kodra's February 19, 2018 email and requested that Ms. Kodra complete the online application through a link Ms. Vicario provided. Ms. Vicario explained that submitting the application via this online platform allowed for coordinated communication between the scheduling team, the hiring managers and rest of the team.

31. On March 4, 2018, Ms. Kodra completed the online application and answered affirmatively that she had work authorization. That same day, Ms. Kodra sent an email to Ms. Vicario to confirm that she had completed the online application. Ms. Kodra asked Ms. Vicario if there were any additional steps Ms. Kodra needed to take in the hiring process.

32. On March 8, 2018, Ms. Vicario emailed Ms. Kodra with additional questions regarding which specific region within New York State Ms. Kodra would consider for her

employment. In the same email, Ms. Vicario asked whether Ms. Kodra "would require sponsorship for employment with M&T…or are you eligible to work in the US permanently without the need for future sponsorship."

33. On March 12, 2018, Ms. Kodra responded by email to Ms. Vicario confirming her request for employment in "Upstate New York (Hudson Valley)" and stated, "I will not require sponsorship. I have employment authorization and expect to have it until 2020."

34. On March 14, 2018 Ms. Vicario sent an email to Ms. Kodra that stated: "Unfortunately, we require that candidates have permanent work authorization for consideration in the Management Development Program."

35. If Ms. Kodra did not belong to a class of non-citizens whose work authorization has a future expiration date, M&T would have entered into an employment contract with Ms. Kodra for the retail branch manager position with the Management Development Program.

36. DACA recipients are not the only class of noncitizens who possess federal work authorization but are ineligible to work for M&T because of its facially discriminatory policy and/or practice that discriminates on the basis of alienage. M&T's requirements for entering into a work contract also discriminate against work-authorized asylees, deferred action recipients, trafficking survivors and relatives of visa holders, among other classes of noncitizens who are authorized to work in the United States and whose valid federal work authorization contains a future expiration date.

## CLASS ACTION ALLEGATIONS

37. Plaintiff Ms. Kodra brings her class allegations under Fed. R. Civ P. 23 (a), (b)(2), (c)(4) and (b)(3) on behalf of a class defined as follows: All noncitizens who are within the jurisdiction of the United States and authorized to work in the United States, who were denied

employment with Defendant M&T under the company's policies and/or practices for hiring work-authorized noncitizens between March 14, 2018 and the date of judgment in this action (the "Class").

38. Ms. Kodra is a member of the Class.

39. Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable. M&T is a large corporation with offices throughout the eastern United States, USCIS has approved over 800,000 applications for DACA, and there are thousands of individuals who, despite having work authorization, do not meet M&T's requirements for employment. Ms. Kodra does not know the precise number of Class members because this information is within the possession of M&T.

40. Questions of law and fact are common to the Class and these questions predominate over any questions affecting only individual members. Common questions include, among others: (1) whether it is M&T's policy or practice to reject job applicants or terminate current workers who are authorized to work in the United States because they are not United States citizens and because they possess valid work authorization that is limited in duration; (2) whether M&T's policy, as set forth above, deprives Plaintiff and the Class of the right to contract for work in the United States in violation of 42 U.S.C. § 1981; (3) whether Ms. Kodra and the Class are entitled to back-pay relief; (4) whether Ms. Kodra and the Class suffered harm by reason of M&T's unlawful policy; (5) whether Ms. Kodra and the Class are entitled to compensatory damages; (6) whether Ms. Kodra and the Class are entitled to punitive damages; (7) whether equitable and injunctive relief for the Class is warranted; and (8) the scope of a resulting permanent injunction.

41. Ms. Kodra's claims are also typical of the claims of the Class because: (1) Ms. Kodra was within the jurisdiction of the United States and not a citizen of the United States; (2) Ms.

Kodra was authorized to work within the United States; (3) Ms. Kodra applied for a position at M&T; and (4) Ms. Kodra was rejected because of alienage. These claims are substantially shared by each and every Class member. All of the claims arise from the same course of conduct of M&T, and the relief sought is common.

42. Ms. Kodra will fairly and adequately represent and protect the interests of the members of the Class. Ms. Kodra has no conflict with any Class member. Ms. Kodra is committed to the goal of altering M&T's hiring policies and practices to end discrimination against Ms. Kodra and those who are similarly situated by virtue of their noncitizenship and legal authorization to work in the United States.

43. Ms. Kodra has retained competent counsel experienced in complex employment discrimination class actions.

44. The precise number of individuals affected by M&T's unlawful policy and practice is ascertainable through M&T's records and therefore the proposed class is ascertainable.

45. Class certification is appropriate pursuant to Fed. R. Civ. P. 23 (b)(2) because M&T has acted and/or refused to act on grounds that are generally applicable to the Class, which makes declaratory and injunctive relief with respect to Plaintiff and the Class as a whole appropriate. M&T has refused to hire and/or has terminated noncitizens ostensibly because they are not citizens or are noncitizens whose federal work authorization is limited as to duration of time. The Class members are entitled to injunctive relief to end M&T's common, uniform, unfair, and discriminatory policy and/or practice including priority instatement and other relief that will make Class members whole.

46. Class certification is also appropriate pursuant to Fed. R. Civ. P. 23 (b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class. Furthermore, a class action is superior to other available methods for the fair

and efficient adjudication of this litigation since joinder of all members is impracticable. The Class members have been damaged and are entitled to recovery as a result of M&T's common, uniform, unfair, and discriminatory policy and/or practice. Damages are capable of measurement on a class-wide basis and will be calculated based on the wages lost due to M&T's unlawful policy and/or practice. The propriety and amount of punitive damages are based on M&T's conduct making these issues common to the Class. Ms. Kodra and the Class will rely on common evidence to resolve their legal and factual questions. There are no pending actions raising similar claims. M&T is a resident of and engages in continuous, permanent, and substantial activity in the Southern District of New York. There will be no undue difficulty in the management of this litigation as a class action.

## COUNT I – ALIENAGE DISCRIMINATION
(42 U.S.C. §1981)

47. Plaintiff Ms. Kodra incorporates by reference the allegations in all preceding paragraphs.

48. Ms. Kodra brings this claim on her own behalf and on behalf of the Class.

49. Ms. Kodra is a person within the jurisdiction of the United States.

50. Ms. Kodra is not a citizen of the United States.

51. Ms. Kodra is lawfully present and authorized to work in the United States.

52. Defendant M&T intentionally discriminated against Plaintiff and the Class on the basis of alienage by denying them contracts to work or deterring them from pursuing employment opportunities because they are noncitizens whose federal work authorization is time limited and despite their legal authorization to work in the United States.

53. M&T's intentional discrimination against Plaintiff and the Class has interfered with their right to make and enforce work contracts.

54. M&T's facially discriminatory policy and/or practice of denying work opportunities

to Plaintiff and the Class based on their alienage, despite their legal authorization to work in the United States, has harmed Plaintiff and the Class, and constitutes unlawful alienage discrimination in violation of 42 U.S.C. § 1981.

55. Ms. Kodra and Class members have no plain, adequate, or complete remedy at law to redress the wrongs alleged in this Complaint, and the injunctive relief sought in this action is the only means to secure complete and adequate relief. Ms. Kodra and the Class she seeks to represent now suffer, and will continue to suffer, irreparable injury from M&T's discriminatory acts and omissions.

56. M&T's conduct has caused, and continues to cause, Ms. Kodra and Class members substantial losses in earnings and other work benefits.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Kodra and the Class pray for relief as follows:

57. Certification of the case as a class action on behalf of the proposed Class;

58. Designation of Ms. Kodra as a Representative on behalf of the Class;

59. Designation of Ms. Kodra's counsel of record as Class counsel;

60. A declaratory judgment that the practices complained of herein are unlawful and violate 42 U.S.C. § 1981;

61. A preliminary and permanent injunction against M&T and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, to restrain them from engaging in each of the unlawful policies, practices, customs, and usages set forth herein; an order restoring Ms. Kodra and Class members to their rightful positions at M&T, as applicants, contractors, or employees, or in lieu of instatement or reinstatement, an order for front pay (including interest) and benefits;

62. Back-pay (including interest and benefits) for Ms. Kodra and Class Members;

63. All damages sustained as a result of M&T's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

64. Exemplary and punitive damages in an amount commensurate with M&T's ability to pay and to deter future conduct;

65. Costs incurred herein, including reasonable attorney's fees to the extent allowable by law;

66. Pre-judgment and post judgment interest, as provided by law; and

67. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

68. Pursuant to Fed. R. of Civ. P. 38, Ms. Kodra hereby demands a jury trial for all claims so triable.

Dated: May 12, 2020                     Respectfully submitted,

**THE MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**

By: */s/ Nina Perales*
Nina Perales
110 Broadway, Suite 300
San Antonio, TX 78205
T: 210- 224-5476
F: 210-224-5382
*nperales@maldef.org*

Thomas Saenz*
634 Spring St., 11th Floor
Los Angeles, CA 90014
T: 213-629-2512
F: 213-629-0266
*tsaenz@maldef.org*

Griselda Vega Samuel*
11 E. Adams, Suite 700
Chicago, IL 60603
T: 312-427-0701
F: 312-427-0691
*gvegasamuel@maldef.org*

*\*Pending Admission Pro Hac Vice*

*Attorneys for Plaintiff*